IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY SUE PERDUE

v.   Civil Case No. GLR-13-1272

COMMISSIONER, SOCIAL SECURITY

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 10, 14. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Perdue's motion be denied.

Ms. Perdue applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 1, 2010, alleging a disability onset date of July 1, 2006.[1] (Tr. 144-51). Her claims were denied initially on June 4, 2010, and on reconsideration on October 13, 2010. (Tr. 72-75, 82-85). An Administrative Law Judge ("ALJ") held a hearing on September 27, 2011, (Tr. 37-67), and subsequently denied benefits to Ms. Perdue in a written opinion, (Tr. 17-27). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final,

---

[1] Ms. Perdue later applied for Disabled Widow's Benefits ("DWB"), and requested that the DWB claim be merged with the DIB and SSI claims. (Tr. 241-51).

reviewable decision of the agency.

The ALJ found that Ms. Perdue suffered from the severe impairments of chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, and degenerative disc disease and arthritis of the lumbar spine. (Tr. 19). Despite these impairments, the ALJ determined that Ms. Perdue retained the residual functional capacity ("RFC") so that:

> she can lift 10 pounds frequently and 20 pounds occasionally; she can sit for 6 hours (30 minutes at a time), stand for 2 hours (20 minutes at a time), and walk for 2 hours (20 minutes at a time) in an 8-hour workday; she can occasionally climb stairs, balance, reach above shoulder level, push/pull with the upper extremities, and operate foot controls; she can occasionally be exposed to vibration, moving machinery, or unprotected heights; she cannot climb ladders, stoop, kneel, crouch, crawl, or be exposed to extreme cold or heat, wetness/humidity, or pulmonary irritants like gas, dust, fumes, and odors.

(Tr. 21). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Perdue could perform, and that she was not therefore disabled. (Tr. 26-27).

Ms. Perdue disagrees. She asserts two arguments in support of her appeal: (1) that the ALJ failed to properly weigh the opinion evidence; and (2) that the ALJ erred in finding Ms. Perdue not credible. Each argument lacks merit.

Ms. Perdue's first argument that the ALJ erred in assigning weight to the opinion of treating physician, Dr. John D. Whittaker, has several sub-parts. Pl. Mot. 14-17. The ALJ gave Dr. Whittaker's opinion "weight, except for his conclusory, unsupported/unexplained statements regarding the claimant's inability to sustain work[.]" (Tr. 25). The ALJ explained her basis for discounting Dr. Whittaker's statements pertaining to Ms. Perdue's overall disability. (Tr. 24) ("Dr. Whittaker gave opinions about tolerating full-time work, tolerating stress, absenteeism, etc. that are conculsory [sic] and do not flow from the exertional capacities he gave."). Moreover,

the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *1 (S.S.A July 2, 1996) (instructing that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance").

Moreover, Ms. Perdue suggests that the ALJ rejected the majority of the limitations that Dr. Whittaker identified. Pl. Mot. 14. However, in fact, the ALJ's RFC assessment includes many of the functional limitations that Dr. Whittaker found Ms. Perdue had. *Compare* (Tr. 21) (finding Ms. Perdue has the ability to lift 10 pounds frequently and 20 pounds occasionally, sit for 6 hours (30 minutes at a time, stand for 2 hours (20 minutes at a time), and walk for 2 hours (20 minutes at a time) in an 8-hour workday) *with* (Tr. 951-52) (opining that Ms. Perdue can lift up to 10 pounds frequently and 10 to 20 pounds occasionally, sit for 6 hours, and stand/walk for 2 hours,).[2] Ms. Perdue also contends that the ALJ rejected Dr. Whittaker's entire opinion without providing a "good reason" or considering the factors provided in 20 C.F.R. § 404.1527(c) and § 416.927(c). Pl. Mot. 16. However, the ALJ only discounted Dr. Whittaker's statements on overall disability, and she, in fact, incorporated many of Dr. Whittaker's findings in her ultimate RFC assessment. Thus, the ALJ was not required to undertake explicit consideration of the various factors outlined in 20 C.F.R. § 404.1527(c) and § 416.927(c).

Further, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by

---

[2] Dr. Whittaker also opined that Ms. Perdue was significantly limited in her upper extremities. (Tr. 952). However, he goes on to contradict himself by checking off that she had no limitations in her ability to grasp, turn, and twist objects; make fine manipulations; or use her arms for reaching. (Tr. 952-53).

3

substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard. Both Dr. Whittaker's opinion and the ALJ's analysis of it are more nuanced than Ms. Perdue acknowledges in her argument. Dr. Whittaker cited prolonged expiratory phase, wheezing, lower back and knee pain, high blood pressure, and elevated blood sugar in support of his diagnoses of COPD, arthritic complaints, diabetes, hypertension, dyslipidemia, hyperthyroidism, and gastroesophageal reflux disease. Ms. Perdue argues that Dr. Whittaker's entire opinion is wholly supported because of the cited clinical findings. While those findings do support the diagnoses listed, they do not offer comprehensive support to finding Ms. Perdue completely disabled from working, especially in light of the physician's more detailed findings that she was not so restricted in her functional limitations as to prohibit work. Further, neither of the objective tests that Ms. Perdue cites offer support to a finding of complete disability. The ALJ discussed both records, and accurately summarized that the October 18, 2007 MRI found only mild degenerative changes, and that the March 23, 2010 pulmonary diagnostic test revealed no significant changes from a previous test and only moderately obstructed airways. (Tr. 22-23, 460-61, 627).

Finally, Ms. Perdue argues that Dr. Whittaker's opinion was uncontradicted by other evidence, and that the ALJ relied solely on the opinions provided by non-examining agency physicians. As discussed above, the ALJ was not obligated to give any significance to the aspect of the physician's opinion that she discounted. 20 C.F.R. § 404.1527(d)(1); SSR 96-5p. The ALJ's RFC assessment was actually more restrictive than those functional limitations assessed by Dr. Whittaker. Furthermore, the ALJ supported her ultimate RFC determination, which largely aligned with Dr. Whittaker's functional limitations, with four pages of analysis, including discussion of Ms. Perdue's testimony; the medical records related to Ms. Perdue's pulmonary

issues, low back pain, and cardiac complaints; her reported daily activities; the various medical opinions; and a credibility determination. Thus, I find that the ALJ's assessment of Dr. Whittaker's opinion and her RFC determination were based on substantial evidence.

Next, Ms. Perdue argues that the ALJ failed to properly evaluate her credibility. Pl. Mot. 19. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." Id. at 595. The ALJ followed that process in this case. He determined that Ms. Perdue's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 24). However, he did not find Ms. Perdue's testimony concerning the intensity, persistence, and limiting effects of her symptoms to be fully credible. *Id.* In her credibility analysis, the ALJ contrasted Ms. Perdue's claimed limitations with those endorsed by her treating physician, Dr. Whittaker. (Tr. 24). She noted that while Ms. Perdue claimed she "could barely walk from room to room, could not stand, and could lift only 5 pounds[,]" Dr. Whittaker found her capable of standing and walking for two hours, and lifting ten pounds frequently and 20 pounds occasionally. *Id.* The ALJ observed that, further, every medical source in the record opined that Ms. Perdue could do considerably more than she alleged. *Id.*; *see* (Tr. 1102) (Dr. Fulco opining that Ms. Perdue could stand and/or walk for up to two hours a day for twenty minutes at a time, and could lift twenty pounds occasionally and ten pounds frequently); (Tr. 907-14) (Dr. Najar finding that Ms. Perdue could stand and/or walk for six hours in a workday, and lift ten pounds frequently and twenty pounds occasionally); (Tr. 926) (Dr. Robbins affirming RFC). I find that

5

the analysis provided by the ALJ provides substantial evidence to support her adverse credibility conclusion.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 14); and

2. the Court DENY Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 10), and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated:  February 4, 2014                                          /s/
                                                                         Stephanie A. Gallagher
                                                                         United States Magistrate Judge